FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2013 MAR 8 AM 8 15

STEPHAN HARRIS, CLERK
CHEYENNE

George James
Kelly James
3422 Cribbon Avenue
Cheyenne, Wyoming 82001
Telephone: 307-635-3119

# UNITED STATES DISTRICT COURT

### DISTRICT OF WYOMING

| | |
|---|---|
| GEORGE JAMES, )<br>KELLY JAMES )<br> )<br>    PLAINTIFFS, )<br> )<br>    vs. )<br> )<br>ACCELERATED RECEIVABLES )<br>    SOLUTIONS, INC )<br> )<br> )<br>    DEFENDANT )<br> ) | Case Number: *13-cv-54 -B*<br><br><br><br><br>**Jury Trial Demanded** |

### COMPLAINT

Plaintiffs, GEORGE JAMES and KELLY JAMES (hereinafter "Plaintiffs"), on this 8th

day of March, 2013, brings this action against Accelerated Receivables Solutions, Inc.

(hereinafter "ARS") on the grounds and in the amounts set forth herein.

### I.INTRODUCTION

1. This action arises out of the facts and circumstances surrounding the collection of an

alleged consumer debt. Plaintiffs institute this action for statutory damages, actual damages,

*Receipt #16597*

punitive damages, and the costs of this action, against the Defendant for multiple violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA") 15 U.S.C. §1692 *et seq.*, Fair Credit Reporting Act 15 U.S.C. § 1681 *et. seq.* (hereinafter "FCRA"), seeks declaratory judgment ruling Defendant ARS violated Wyoming Statutes Annotated § 40-12-101 *et seq.* Wyoming Consumer Protection Act (hereinafter "WCPA"), and intentional infliction of emotional distress.

2. While many violations below are described below with specificity, this Complaint alleges violations of the statutes in their entirety.

## II. PARTIES

3. Plaintiffs are natural persons, residing in Cheyenne, Laramie County, Wyoming.

4. Defendant ARS is a Nebraska corporation with its principal place of business at 2223 Broadway Ave, Scottsbluff, NE 69363-0070. Defendant ARS is registered with the Wyoming Secretary of State with a filing number of 1997-000320979.

5. Defendant ARS is a debt collector engaged in the collection of alleged consumer debts using the telephone, the United States Postal Service, and all other means at its disposal.

6. Defendant ARS regularly attempts to collect consumer debts alleged to be due to another.

7. Defendant ARS is operating as a "debt collector" and a "collection agency" in the state of Wyoming, as Defendant ARS uses and used the United States Postal Service and conducts the business of a collection agency in the state of Wyoming.

## III. JURISDICTION AND VENUE

8. Jurisdiction is conferred on this Court by the FDCPA, 15 U.S.C. § 1692k(d), FCRA, 15 U.S.C. § 1681(p), 28 U.S.C. § 1331, and 28 U.S.C. § 1367. This honorable Court is a Court of competent jurisdiction which has original jurisdiction over Plaintiffs federal claims and is authorized by the FDCPA and FCRA to hear and adjudicate Plaintiffs claims against Defendant ARS.

9. As Plaintiffs state claim is related to Plaintiffs federal claims, are inextricably entwined and arise out of a common nucleus of related facts, this Court has supplemental jurisdiction to hear Plaintiffs state claim against Defendant ARS.

10. Plaintiffs state claim is related to Plaintiffs federal claims as those claims form part of the same case of controversy under Article III of the United States Constitution.

11. Plaintiffs state claim is not complex or novel and is straightforward.

12. Declaratory relief is available pursuant to 28 U.S.C. § 2201 and § 2202.

13. Declaratory judgment is just and proper in this case, as declaratory judgment will send the appropriate message to the Defendant ARS that their conduct will continue to subject them to future damages.

14. Venue is proper as all alleged conduct by Defendant ARS took place in Cheyenne, Wyoming, while the Plaintiffs were residing in Cheyenne, Wyoming.

## IV. STATUTORY STRUCTURE FDCPA

15. The FDCPA is a strict liability statute and no section of the FDCPA requires an inquiry into the worthiness of the debtor or purports to protect only deserving debtors. The FDCPA protects all consumers, from the gullible to the shrewd.

16. The existence or validity of the underlying debt is not material in a FDCPA action.

17. Under the FDCPA, whether conduct or action violates the FDCPA is to be determined by analyzing the conduct or action from the perspective of the least sophisticated consumer.

18. Under the FDCPA, there is no requirement that any intent to deceive be established when evaluating if certain conduct or actions violated or violates the FDCPA.

19. Under the FDCPA, a "consumer" is any natural person obligated or allegedly obligated to pay any debt. *See 15 U.S.C. § 1692a(3).*

20. Under the FDCPA, "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes. *See 15 U.S.C. § 1692a(5).*

21. Under the FDCPA, a "debt collector" is any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another. *See 15 U.S.C. § 1692a(6).*

22. Under the FDCPA, a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. *See 15 U.S.C. § 1692e.*

23. Under the FDCPA, a debt collector may not misrepresent the character, amount, or legal status of an alleged debt. *See 15 U.S.C. § 1692e(2)*.

24. Under the FDCPA, a debt collector may not communicate or threaten to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. *See 15 U.S.C. § 1692e(8)*.

25. Under the FDCPA, a debt collector may not use any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. *See 15 U.S.C. § 1692e(10)*.

26. Any debt collector who fails to comply with the provisions of the FDCPA is liable for any actual damages sustained; statutory damages up to $1,000; attorneys' fees as determined by the Court and costs of this action. *See 15 U.S.C. § 1692k*.

### V. STATUTORY STRUCTURE FCRA

27. The Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA") purpose is to create accuracy and fairness in credit reporting. "It is the purpose of this title to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is **fair and equitable to the consumer**, with regard to the confidentiality, accuracy, **relevancy**, and proper utilization of such information in accordance with the requirements of this title." *See 15 U.S.C. § 1681*, emphasis added.

28. Under the FCRA, the term "person" means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." *See 15 U.S.C. § 1681a(b).*

29. Under the FCRA, the term "consumer" means an individual." *See 15 U.S.C. § 1681a(c).*

30. Under the FCRA, the term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." *See 15 U.S.C. § 1681a(3)(f).*

31. Under the FCRA, the term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes; employment purposes; or any other authorized purpose. *See 15 U.S.C. § 1681a(d)(1).*

32. Under the FCRA, if the consumer disputes any item, the consumer reporting agency must reinvestigate. *See 15 U.S.C. § 1681i(a)(1).*

33. Under the FCRA, the consumer reporting agency must notify the furnisher reporting the inaccuracy of the dispute. *See 15 U.S.C. § 1681i(a)(2).*

34. Under the FCRA, subsection (b) imposes a number of duties on furnishers of information upon receiving notice from a consumer reporting agency of "a dispute with regard to the completeness or accuracy of any information provided . . . to [the agency]," including: (1) to conduct a reasonable investigation of the disputed information; (2) to review the information regarding the dispute provided by the consumer reporting agency; (3) to report the results to the consumer reporting agency; (4) to report any incomplete or inaccurate information to other consumer reporting agencies; and (5) to correct or remove the inaccurate or incomplete information. *See 15 U.S.C. § 1681s-2(b) et. seq.*

35. Under the FCRA, any debt collector who fails to comply with the provisions of the FCRA is liable for actual damages, statutory damages up to $1,000, punitive damages, attorneys' fees as determined by the Court, and costs of this action. *See 15 U.S.C. § 1681n.*

## VI. STATUTORY STRUCTURE WCPA

36. Under the WCPA, it is unlawful to engage in unfair or deceptive acts or practices. *See Wyoming Statutes Annotated § 40-12-105.*

37. Under the WCPA, a person engages in a deceptive trade practice unlawful under this act when, in the course of his business and in connection with a consumer transaction, he knowingly engages in unfair or deceptive acts or practices. *See Wyoming Statutes Annotated § 40-12-105(a)(xv).*

38. Under the WCPA, a person relying upon an uncured unlawful deceptive trade practice may bring an action under this act for actual damages. *See Wyoming Statutes Annotated § 40-12-108.*

## VII. FACTS COMMON TO ALL COUNTS

39. At all times the Plaintiffs were consumers as defined by the FDCPA, FCRA, and WCPA.

40. On or about September 10, 2010, ARS mailed or caused to be mailed, initial collection letters to Mr. and Mrs. James alleging money owed for ARS account number 840572.

41. On or about May 19, 2011, ARS mailed or caused to be mailed, an initial collection letter to Mr. James alleging money owed for ARS account number 901106.

42. On or about January 2, 2012, ARS mailed or caused to be mailed, an initial letter collection letter to Mrs. James alleging money owed for ARS account number 840625.

43. On or about February 22, 2012, ARS mailed or caused to be mailed, an initial collection letter to Mrs. James alleging money owed for ARS account number 962534.

44. On or about October 10, 2012, ARS mailed or caused to be mailed, an initial collection letter to Mrs. James alleging money owed for ARS account number 1037578.

45. On May 24, 2011, Mr. James sent a letter to ARS disputing the alleged debt and requesting validation, in response to the collection letter ARS mailed or caused to be mailed regarding account number 901106, pursuant to 15 U.S.C. § 1692g.

46. On February 13, 2012, Mr. and Mrs. James sent individual letters to CRI disputing the alleged debt and requesting validation, in response to collection letters ARS mailed or caused to be mailed regarding account number 840572.

47. On February 13, 2012, Mrs. James sent a letter to ARS disputing the alleged debt and requesting validation, in response to the collection letter ARS mailed or caused to be mailed regarding account number 840625, pursuant to 15 U.S.C. § 1692g.

48. On March 23, 2012, Mrs. James sent a letter to ARS disputing the alleged debt and requesting validation, in response to the collection letter ARS mailed or caused to be mailed regarding account number 962534, pursuant to 15 U.S.C. § 1692g.

49. On October 22, 2012, Mrs. James sent a letter to ARS disputing the alleged debt and requesting validation, in response to the collection letter ARS mailed or caused to be mailed regarding account number 103578, pursuant to 15 U.S.C. § 1692g.

50. On May 26, 2011, ARS received the letter Mrs. James mailed regarding account number 901106.

51. On February 17, 2012, ARS received the letters the James's mailed regarding account numbers 840572 and 840625.

52. On March 28, 2012, ARS received the letter Mrs. James mailed regarding account number 962534.

53. On October 26, 2012, ARS received the letter Mrs. James mailed regarding account number 1037578.

54. On or about February 2, 2012, Mr. James obtained his credit report from Experian.

55. The report contains 2 derogatory trade lines from ARS for account numbers 840572 and 901106.

56. The report does not have any indication that Mr. James disputed the alleged ARS debts.

57. Pursuant to 15 U.S.C. § 1681c(f), if ARS reported that Mr. James disputed the alleged debts to Experian, Experian had to include that information in the credit report.

58. On or about February 28, 2012, Mr. James disputed the 2 ARS trade lines with Experian pursuant to 15 U.S.C. § 1681i (a)(1).

59. Experian did not notify Mr. James at any time that the dispute was considered frivolous or irrelevant, or that Mr. James had failed to provide sufficient information to investigate the disputed information.

60. On or about March 16, 2012, Experian responded that ARS verified the trade lines as correct.

61. On or about April 12, 2012, Mrs. James obtained her credit report from Experian.

62. The report contains 3 derogatory trade lines from ARS for account numbers 840572, 840625, and 962534.

63. The report does not have any indication that Mrs. James disputed the alleged ARS debts.

64. Pursuant to 15 U.S.C. § 1681c(f), if ARS reported that Mrs. James disputed the alleged debts to Experian, Experian had to include that information in the credit report.

65. On or about April 12, 2012, Mrs. James disputed the 3 ARS trade lines with Experian pursuant to 15 U.S.C. § 1681i(a)(1).

66. Experian did not notify Mrs. James at any time that the dispute was considered frivolous or irrelevant, or that Mrs. James had failed to provide sufficient information to investigate the disputed information.

67. On or about April 26, 2012, Experian responded that ARS verified the trade lines as correct.

68. On or about April 2, 2012, Mr. James obtained his credit report from Experian.

69. The report contains 2 derogatory trade lines from ARS for account numbers 840572 and 901106.

70. The report does not have any indication that Mr. James disputed the alleged ARS debts.

71. Pursuant to 15 U.S.C. § 1681c(f), if CRI reported that Mr. James disputed the alleged debts to Experian, Experian had to include that information in the credit report.

72. On or about April 3, 2012, Mr. James disputed the 2 ARS trade lines with Experian pursuant to 15 U.S.C. § 1681i(a)(1).

73. Experian did not notify Mr. James at any time that the dispute was considered frivolous or irrelevant, or that Mr. James had failed to provide sufficient information to investigate the disputed information.

74. On or about April 13, 2012, Experian responded that ARS verified the trade lines as correct.

75. On or about July 2, 2012, Mrs. James obtained her credit report from Experian.

76. The report contains 1 derogatory trade line from ARS for account number 962534.

77. The report does not have any indication that Mrs. James disputed the alleged ARS debt.

78. Pursuant to 15 U.S.C. § 1681c(f), if CRI reported that Mrs. James disputed the alleged debts to Experian, Experian had to include that information in the credit report.

79. On or about July 2, 2012, Mrs. James disputed the 1 ARS trade line with Experian pursuant to 15 U.S.C. § 1681i(a)(1).

80. Experian did not notify Mrs. James at any time that the dispute was considered frivolous or irrelevant, or that Mrs. James had failed to provide sufficient information to investigate the disputed information.

81. On or about July 24, 2012, Experian responded that ARS verified the trade line as correct.

82. On or about January 2, 2013, Mrs. James obtained her credit report from Experian.

83. The report contains 1 derogatory trade line from ARS for account number 1037578.

84. The report does not have any indication that Mrs. James disputed the alleged ARS debt.

85. Pursuant to 15 U.S.C. § 1681c(f), if CRI reported that Mrs. James disputed the alleged debts to Experian, Experian had to include that information in the credit report.

86. On or about January 4, 2013, Mrs. James disputed the 1 ARS trade line with Experian pursuant to 15 U.S.C. § 1681i(a)(1).

87. Experian did not notify Mrs. James at any time that the dispute was considered frivolous or irrelevant, or that Mrs. James had failed to provide sufficient information to investigate the disputed information.

88. On or about January 10, 2013, Experian responded that ARS verified the trade lines as correct.

89. On or about March 6, 2013, Mrs. James obtained a copy of her Experian credit report.

90. Account numbers 962534 and 1037578 remain on Mrs. James's Experian report and do not have any indication that the accounts are disputed.

## VIII. COUNT 1 FDCPA VIOLATIONS

91. The allegations of all above paragraphs of this Complaint are realleged and incorporated by reference. The Defendant's violation of the FDCPA include but are not limited to the following:

92. Defendant ARS, on or about March 16, 2012, April 13, 2012, April 26, 2012, July 24, 2012, and January 10, 2013, violated the FDCPA, specifically 15 U.S.C. § 1692e, 1692e(2), 1692e(8), 1692e(10), and 1692f. Defendant ARS misrepresented the character, amount, and legal status of the alleged debts, failed to communicate a disputed debt is disputed, with the information provided to Experian. As such it is a violation of 15 U.S.C. § 1692e, 1692e(2), 1692e(8), 1692e(10), and 1692f. As a result of Defendant ARS's violation of the FDCPA, Plaintiffs are entitled to actual damages, statutory damages in an amount up to $1,000.00 per Plaintiff, reasonable attorney's fee, and costs pursuant to 15 U.S.C. § 1692k.

93. Defendant ARS's violation of Wyoming state law, in regards to engaging in deceptive practices are a violation of the FDCPA. A violation of state law constitutes a violation of the FDCPA, because the state law violation is a violation which involves false, deceptive, or misleading representations. *See, Carlson vs First Revenue Assurance, 359 F3d. 1015 (8th Cir. 2004).* As a result of Defendant ARS's violations of the FDCPA, Plaintiffs are entitled to actual damages, statutory damages in an amount up to $1,000.00 per Plaintiff, reasonable attorney's fee, and costs pursuant to 15 U.S.C. § 1692k.

## IX. COUNT 2 VIOLATIONS OF THE FCRA

94. The allegations of all above paragraphs of this Complaint are realleged and incorporated by reference. The Defendant's violation of the FCRA include but are not limited to the following:

95. Defendant ARS regularly and in the course of business, furnishes information to one or more consumer reporting agencies about their transactions or experiences with any consumer.

96. Defendant ARS failed to review all relevant information provided by Experian. As such it is a violation of 15 U.S.C. 1681i(a)(2), and 15 U.S.C. § 1681s-2(b)(1)(B). As a result of Defendant ARS's violation of the FCRA, Plaintiffs are entitled to actual damages, punitive damages, statutory damages up to $1000.00, reasonable attorney's fee, and costs pursuant to 15 U.S.C. § 1681n.

97. Defendant ARS failed to conduct a reasonable investigation with respect to the disputed information, after notice of dispute was received at the office of ARS. As such it is a violation of 15 U.S.C. § 1681s-2(b)(1). As a result of Defendant ARS's violation of the FCRA, Plaintiffs are entitled to actual damages, punitive damages, statutory damages up to $1000.00, reasonable attorney's fee, and costs pursuant to 15 U.S.C. § 1681n.

98. Defendant ARS failed to report the results of the investigation to Experian. As such it is a violation of 15 U.S.C. § 1681s-2(b)(1)(C). As a result of Defendant ARS's violation of the FCRA, Plaintiffs are entitled to actual damages, punitive damages, statutory damages up to $1000.00, reasonable attorney's fee, and costs pursuant to 15 U.S.C. § 1681n.

99. Defendant ARS failed to report the results of the investigation findings to Experian that the information provided by such person was incomplete or inaccurate. As such it is a violation of 15 U.S.C. § 1681s-2(b)(1)(D). As a result of Defendant ARS's violation of the FCRA, Plaintiffs are entitled to actual damages, punitive damages, statutory damages up to $1000.00, reasonable attorney's fee, and costs pursuant to 15 U.S.C. § 1681n.

100. Defendant ARS failed to find that the information disputed was inaccurate and/or incomplete. As such it is a violation of 15 U.S.C. § 1681s-2(b)(1)(E). As a result of Defendant ARS's violation of the FCRA, Plaintiffs are entitled to actual damages, punitive damages, statutory damages up to $1000.00, reasonable attorney's fee, and costs pursuant to 15 U.S.C. § 1681n.

101. Defendant ARS failed to modify the disputed items of information. As such it is a violation of 15 U.S.C. § 1681s-2(b)(1)(E)(i). As a result of Defendant ARS's violation of the FCRA, Plaintiffs are entitled to actual damages, punitive damages, statutory damages up to $1000.00, reasonable attorney's fee, and costs pursuant to 15 U.S.C. § 1681n.

102. Defendant ARS in response to the notice of investigation from Experian, verified that the disputed information was accurate and complete, even though they were in possession of information which showed that the trade line was inaccurate. The fact that this was done in response to an investigation request from Experian is evidence of willful noncompliance on the part of ARS.

103. Plaintiffs allege that ARS violated the FCRA by knowingly and intentionally report erroneous information to Experian and defame Plaintiffs by continuing to report incorrect information in order to willfully, intentionally and maliciously, injure Plaintiffs credit worthiness.

## X. COUNT 3 VIOLATIONS OF WCPA

104. The allegations of all above paragraphs of this Complaint are realleged and incorporated by reference. The Defendant's violation of the WCPA include but are not limited to the following:

105. Defendant ARS's communications with the Plaintiffs, was made while conducting the business of a collection agency and a debt collector in the state of Wyoming.

106. Defendant ARS recklessly and willfully chose to continue to report inaccurate information to Experian despite having constructive notice of disputes. Plaintiffs are entitled to actual damages pursuant to Wyoming Statutes Annotated § 40-12-108.

## XI. COUNT 4 TORTS VIOLATIONS

107. The allegations of all above paragraphs of this Complaint are realleged and incorporated by reference. Defendant ARS engaged in extreme, outrageous, and unreasonable acts with respect to Plaintiffs with a willful intent to harass and injure them. As indicated above, Defendant violated the FDCPA, FCRA and WCPA. Thus, ARS violated a statutory duty that gives rise to a tort (tort-in-se).

108. Defendant ARS's violation of a statutory duty led to Plaintiffs being injured.

109. A violation of a statutory duty to another may be a tort, and a violation of a statute embodying a public policy is generally actionable even though no specific civil remedy is provided in the statute itself.

110. Defendant ARS intended to harass and cause Plaintiffs to suffer emotional distress, and/or negligently engaged in outrageous conduct with reckless disregard of the probability of negligently causing Defendant to suffer emotional distress.

111. Defendant ARS knowingly, willfully, deliberately, and repeatedly ignored the constructive notice that the alleged debts are disputed.

112. As a direct and proximate result of Defendant ARS's outrageous conduct, Plaintiffs suffered emotional distress.

## XII. REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, George James and Kelly James, respectfully requests this honorable Court find in their favor and enter judgment against the Defendant for the following:

a. Declaratory judgment ruling and finding Accelerated Receivables Solutions, Inc. violated the Wyoming Consumer Protection Act, Wyoming Statutes Annotated § 40-12-101 *et seq.* Specifically, engaging in deceptive trade practices in the state of Wyoming;

b. Statutory damages of $1,000 per Plaintiff, pursuant to FDCPA 15 U.S.C. § 1692k;

c. Actual damages of $5,000, pursuant to FDCPA 15 U.S.C. § 1692k for emotional distress;

d. Statutory damages of $12,000 pursuant to FCRA 15 U.S.C. § 1681n(a)(1)(A);

    e.  Punitive damages of $50,000 pursuant to FCRA 15 U.S.C. § 1681n(a)(2) for negligent and willful violations;

    f.  Court costs, service costs, and reasonable attorneys fees;

    g.  Such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

    PLEASE TAKE NOTICE that Plaintiffs, George James and Kelly James, hereby demands a trial by jury of all triable issues of fact in the above-captioned case.

Date: March 8, 2013

Kelly James
3422 Cribbon Avenue
Cheyenne, Wyoming 82001
kj_james71@yahoo.com
307-635-3119

George James
3422 Cribbon Avenue
Cheyenne, Wyoming 82001
gjames1@gmail.com
307-635-3119